IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-00838-LTB-CBS

DR. JANET B. SULLIVAN,
        Plaintiff,
v.

DR. FRANCIS J. HARVEY, Department of Army, Agency, and
MS. CARI M. DOMINGUEZ, Commissioner, Equal Employment Opportunity Commission,
Agency,
        Defendants.
_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on Defendants' Motion to Dismiss (filed July

7, 2006) (doc. # 4).  Pursuant to the Order of Reference dated May 5, 2006 (doc. # 2) and

the memorandum dated September 25, 2006 (doc. # 26), the Motion was referred to the

Magistrate Judge.  The court has reviewed the Motion, Ms. Sullivan's Response (filed

August 16, 2006) (doc. # 8), Defendants' Reply (filed September 8, 2006) (doc. # 23),

Defendants' Supplement (filed September 12, 2006) (doc. # 24), the pleadings, the

arguments made at the hearing held September 26, 2006, the entire case file and the

applicable law and is sufficiently advised in the premises.


I.      Statement of the Case

        On June 9, 2003, Ms. Sullivan entered into a "Negotiated Settlement Agreement"

("NSA") with representatives of the Department of the Army 7th Infantry Division and Fort

Carson ("Army").  At that time, Ms. Sullivan was employed as the Equal Employment

Manager for the Army's Fort Carson installation in Colorado Springs, Colorado.

(Complaint at ¶ 1a.).  The NSA settled an Equal Employment Opportunity ("EEO")

Complaint of discrimination that Ms. Sullivan had filed on November 5, 2002 and amended

1

on April 30, 2003, May 28, 2003, and June 3, 2003.  (*See* "Title VII Complaint" ("Complaint") (doc. # 1, at ¶ 1b.; attachments to Complaint (doc. # 1-2, pp. 4-6 of 29; doc. # 1-5, at pp. 34-35 of 42)).  Pursuant to the NSA, Ms. Sullivan took voluntary early retirement from federal service effective July 3, 2003 with, among other things, a promotion, a $25,000 buyout bonus, reinstatement of sick leave and annual leave, reimbursement for administrative costs in the amount of $1,000.00, and "a lump sum of $61,000.00 for compensatory and medical damages."  (*See* NSA at ¶ 3. (h), attached to Complaint (doc. # 1-2, p. 5 of 29)).  The NSA specifically provided that the Army made no representations to Ms. Sullivan "concerning the tax consequences of this payment" and that "any tax obligation shall be the obligation of [Ms. Sullivan] and not the obligation of the Agency. . . ."  (*See* NSA at ¶ 3. (h) (doc. # 1-2, p. 5 of 29)).

Ms. Sullivan alleges that in April of 2005, while preparing her 2003 federal and state income tax returns, she discovered "that an IRS Form 1099 Misc. had been filed by Defense Finance and Accounting System (DFAS), which reported $61,000 of the settlement agreement (paragraph 3h) as taxable income."  (Complaint at ¶ 1d.).  "[T]axes were not withheld at the time of the disbursement of the lump sum."  (Complaint at ¶ 1d.).  Ms. Sullivan contends that the $61,000.00 "was intended to be non-taxable income for compensatory and medical damages."  (Complaint at ¶ 1d.).

On or about April 6, 2005, Ms. Sullivan sent a letter to the Fort Carson Office of the Staff Judge Advocate, requesting that the IRS Form 1099 Misc. be corrected.  (*See* attachments to Complaint (doc. # 1-2, pp. 1-3 of 29)).  The letter was forwarded to the Fort Carson EEO Office for action.  (*See* April 18, 2005 letter, attached to Complaint (doc. # 1-4, p. 17 of 28)).  By letter dated April 18, 2005, the EEO informed Ms. Sullivan that her letter would be treated as an allegation that the Army failed to comply with the terms of the NSA.  (*See id.*).  Ms. Sullivan's letter was forwarded to the Army Deputy for Equal Employment Opportunity Compliance and Complaints Review.  (*See id.*).  On April 28,

2005, the EEO denied Ms. Sullivan's request, stating that "the NSA does not contain language indicating that the $61,000.00 settlement payment was to be treated as nontaxable" and that "[m]oreover, your claim that the NSA has been breached is untimely. . . ." (attachments to Complaint (doc. # 1-4, p. 18 of 28)).

On May 25, 2005, Ms. Sullivan filed an appeal with the EEOC. (*See* attachments to Complaint (doc. # 1-2, pp. 17-29 of 29)). Addressing the EEO's determination that her claim regarding the NSA was untimely, Ms. Sullivan alleged for the first time that she was taking several medications at the time she agreed to the NSA and "did not have the mental ability to process the information or comprehend its meaning." (*See* attachments to Complaint (doc. # 1-2, at p. 26 of 29)).

On October 6, 2005, the EEOC denied Ms. Sullivan's appeal. (*See* attachments to Complaint (doc. # 1-4, at pp. 24-28 of 28)). On November 5, 2005, M. Sullivan requested reconsideration of the EEOC's decision. (*See* attachments to Complaint (doc. # 1-5, at pp. 1-3 of 42)). On February 3, 2006, the EEOC denied Ms. Sullivan's request for reconsideration. (*See* attachments to Complaint (doc. # 1-10, at pp. 23-26 of 35)).

Also on November 5, 2005, Ms. Sullivan filed "new claims of discrimination." (*See* attachments to Complaint (doc. # 1-7, at pp. 14-16 of 17)). After the new claims were counseled in accordance with the administrative complaint procedures (*see* attachments to Complaint (doc. # 1-10, at pp. 16-26 of 26), Ms. Sullivan was informed on December 16, 2005 that she had the right to file a formal complaint of discrimination within 15 days of receipt of the notice. (*See* attachments to Complaint (doc. # 1-9, at pp. 34-36 of 37)). These claims were ultimately dismissed, as was Ms. Sullivan's appeal of the dismissal. (*See* Dismissal of Appeal (doc. # 27)).

On November 11, 2005, Ms. Sullivan sent a letter to several Army officials. (*See* attachments to Complaint (doc. # 1-9, at p. 2 of 37)). Ms. Sullivan received two responses in December of 2005 indicating that the EEO complaint process was the most appropriate

manner to address her issues and denying her request for an additional separate investigation. (*See* attachments to Complaint (doc. # 1-9, at pp. 4, 6 of 37)). On January 2, 2006, Ms. Sullivan wrote to the Fort Carson EEO Officer with "additional claims to add to my EEO Complaint of Discrimination." (*See* attachments to Complaint (doc. # 1-8, at pp. 25-31 of 31)). On or about January 9, 2006, Ms. Sullivan filed a Formal Complaint of Discrimination, referencing her May 25, 2005 initial EEOC appeal correspondence and other correspondence with the EEOC. (*See* attachments to Complaint (doc. # 1-10, at pp. 15-22 of 35); (doc. # 1-11 at p. 15 of 26)). On March 24, 2006 the Army sought clarification of Ms. Sullivan's claims. (*See* attachments to Complaint (doc. # 1-11, at pp. 5-9 of 26)). Ms. Sullivan responded on April 5, 2006 (*See* attachments to Complaint (doc. # 1-10, at pp. 31-35 of 35; doc. # 1-11, at pp. 1-3 of 26)).

On May 2, 2006, Ms. Sullivan filed her "Title VII Complaint," alleging discrimination based upon her gender and her mental and physical disabilities and reprisal. (*See* Complaint at first and second pages). All of Ms. Sullivan's claims relate to her contention that the $61,000.00 lump sum payment "was intended to be non-taxable income for compensatory and medical damages." (*See* Complaint at ¶¶ 1a.- 3c.; attachments to Complaint (doc. # 1-2, pp. 1-3 of 29)). She alleges that the Army did not reasonably accommodate her and took advantage of her impaired condition during the negotiations of the NSA. (Complaint, First Claim for Relief). She alleges that her complaints about the NSA were "met with reprisal" in the manner they were processed by EEO Officers. (Complaint, Second Claim for Relief). Finally, she alleges that the EEOC improperly processed her complaints and appeals. (Complaint, Third Claim for Relief). Defendants have moved to dismiss for several reasons, pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6).

II.     Standard of Review

Defendants move to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for

lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief

can be granted.

> Rule 12(b)(1) empowers a court to dismiss a complaint for lack of
> jurisdiction over the subject matter. As courts of limited jurisdiction, federal
> courts may only adjudicate cases that the Constitution and Congress have
> granted them authority to hear.  Statutes conferring jurisdiction on federal
> courts are to be strictly construed.  If a Rule 12(b)(1) motion to dismiss
> merely challenges the sufficiency of the allegations in the complaint, the
> court must accept those allegations as true, but without regard to mere
> conclusionary allegations of jurisdiction. . . Although the district court may
> consider evidence outside the  pleadings, generally the motion is not
> converted to one for summary judgment pursuant to Rule 56.  The burden
> of establishing subject-matter jurisdiction is on the party asserting
> jurisdiction.

*American Fair Credit Ass'n v. United Credit Nat. Bank*, 132 F. Supp. 2d 1304,1308-09 (D.

Colo. 2001) (internal quotation marks and citations omitted).

> Rule 12(b)(6) states that a court may dismiss a complaint for failure to state
> a claim upon which relief can be granted. The complaint should not be
> dismissed under Rule 12(b)(6) unless it appears beyond doubt that the
> plaintiff can prove no set of facts in support of his claim which would entitle
> him to relief.  In reviewing the sufficiency of the complaint, a court must
> presume that the plaintiff's factual allegations are true and construe them in
> a light most favorable to the plaintiff.

*American Fair Credit Ass'n*, 132 F. Supp. 2d at 1309 (internal quotation marks and

citations omitted).


III.    Analysis

A.     Failure to State Claim Against the EEOC

Defendants argue that Ms. Sullivan's claims alleging that the EEOC improperly

processed her complaints and appeals should be dismissed for failure to state a claim.

The court agrees.  In her Second Claim for Relief, Ms. Sullivan alleges that her complaints

about the NSA were "met with reprisal" in the manner they were processed by EEO

Officers.  (*See* Complaint at ¶¶ 2.; *see also* attachments to Complaint (doc. # 1-7, at pp.

14-16 of 17)).  In her Third Claim for Relief, Ms. Sullivan alleges that in processing her complaints about the NSA, the EEOC denied her a hearing, denied her appeals based on improper interpretation of the law, disregarded evidence, denied submission of additional evidence, and "acted unconscionably" because she was not represented by counsel.  (*See* Complaint at ¶¶ 3a.- 3c.;  *see also* attachments to Complaint (doc. # 1-7, at pp. 14-16 of 17)).  To the extent that Ms. Sullivan is challenging the EEOC's processing of her claims, no cause of action exists under Title VII.  *See Scheerer v. Rose State College*, 950 F.2d 661, 663 (10th Cir. 1991) (dismissing claim against EEOC for alleged discriminatory failure to properly investigate and pursue her claims against third party employer) (citations omitted); *Jordan v. Summers*, 205 F.3d 337, 342 (7th Cir. 2000) (challenge to EEOC's investigation and processing of a charge does not state a valid claim for relief under Title VII).  Ms. Sullivan's Second and Third Claims for Relief are properly dismissed for failure to state a claim.

B.     Failure to Exhaust Administrative Remedies

Defendants argue that Ms. Sullivan has failed to timely exhaust her administrative remedies for a Title VII claim.  As a threshold issue, a federal employee must timely exhaust administrative remedies in order to file a Title VII claim in federal court.  42 U.S.C. § 2000e-16.  In the Tenth Circuit, exhaustion of administrative remedies is a jurisdictional prerequisite to instituting an action for employment discrimination under Title VII, "not merely a condition precedent to suit."  *Shikles v. Sprint/United Management Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005) (citation omitted).[1]  Exhausting administrative remedies entails compliance with applicable EEOC filing regulations.  *Briones v. Runyon*, 101 F.3d 287, 289

---

[1]      To the extent that Ms. Sullivan may be alleging a claim under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, the ADA's provisions governing employment discrimination incorporate the procedural rules of Title VII, including the time bar discussed herein.  *See McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1105 (10th Cir. 2002).

(2d Cir. 1996).

Pursuant to 42 U.S.C. § 2000e-16(b), the EEOC has promulgated regulations, including 29 C.F.R. § 1614.504(a), which provides in pertinent part:

> If the complainant believes that the agency has failed to comply with the terms of a settlement agreement or decision, the complainant shall notify the EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance.

29 C.F.R. § 1614.504(a).[2]   The NSA signed by Ms. Sullivan on June 9, 2003 contained notice of this 30-day time limit.  (*See* attachments to Complaint (doc. # 1-2, at p. 6 of 29, ¶ 8)).

Ms. Sullivan did not allege that the $61,000.00 lump sum payment "was intended to be non-taxable income for compensatory and medical damages" until April 6, 2005, in her letter to the Fort Carson Office of the Staff Judge Advocate.  (*See* attachments to Complaint (doc. # 1-2, pp. 1-3 of 29)).  The EEO denied Ms. Sullivan's request on the grounds that it was untimely and that no breach had occurred.  (*See* attachments to Complaint (doc. # 1-4, p. 18 of 28)).  Ms. Sullivan's noncompliance with the 30-day time limit constitutes failure to exhaust administrative remedies.

The analysis does not end here, however, because "the administrative time limits created by the EEOC . . . are subject to equitable tolling, estoppel, and waiver."  *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (citations omitted).  *See also* 29 C.F.R. § 1614.604(c) (administrative time periods "are subject to waiver, estoppel, and equitable tolling").

"Federal courts have typically extended equitable relief only sparingly."  *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96 (1991).  "The Tenth Circuit has invoked the

---

[2]      To the extent that Ms. Sullivan alleges discrimination based on her "new claims of discrimination" (*see* attachments to Complaint (doc. # 1-7, at pp. 14-16 of 17)),  "[a]n aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."  29 C.F.R. § 1614.105.

equitable tolling doctrine only in particularly egregious circumstances, such as when a plaintiff's reliance upon statements of a court or agency official or on a confusing right-to-sue letter caused him or her to commit procedural errors in the course of otherwise diligently pursuing a claim." *Brucks v. O'Neill*, 184 F. Supp. 2d 1103, 1111 (D. Kan. 2001) (reviewing Tenth Circuit cases applying equitable tolling). *See also Irwin*, 498 U.S. at 96 ("[F]ailure to comply with these time limits may be excused where the claimant actively pursues her judicial remedies by "filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by her adversary's misconduct into allowing the filing deadline to pass"); *Mosley v. Pena*, 100 F.3d 1515, 1517 (10th Cir. 1996) ("Equitable tolling may be appropriate where the defendant has actively misled the plaintiff respecting the cause of action, or where the plaintiff has in some extraordinary way been prevented from asserting his rights)" (internal quotation marks and citation omitted); *Lorenzo v. Rumsfeld*, 456 F. Supp. 2d 731, 738 (E.D. Va. 2006) ("As the Fourth Circuit has recognized, the equitable tolling exceptions are truly narrow, thus, the government cannot be estopped from asserting the . . . time limit as a defense if plaintiff has made no showing of affirmative misconduct on the part of the government. . .") (internal quotation marks and citation omitted); *Harrison v. Potter*, 323 F. Supp. 2d 593, 601 (S.D.N.Y. 2004) ("equitable tolling is usually reserved for those instances involving affirmative misconduct of the opposing party") (internal quotation marks and citation omitted).

Once the defendant meets its burden of showing that the plaintiff failed to exhaust administrative remedies, the plaintiff then must plead and prove that his claims should be equitably tolled. *Harms v. Internal Revenue Service*, 146 F. Supp. 2d 1128, 1135 (D. Kan. 2001) (citations omitted). *See also Herron v. Veneman*, 305 F. Supp. 2d 64, 72 (D.C.D.C. 2004) ("Once the defendant meets its burden of proving that the plaintiff failed to exhaust administrative remedies, the plaintiff then bears the burden of pleading and proving facts supporting equitable avoidance of the defense") (citation omitted).

Ms. Sullivan argues that the administrative time limits should be tolled due to her mental impairment at the time she signed the NSA.  "[T]he Tenth Circuit has never held that mental incapacity entitles an individual to equitable tolling." *Uhey v. Potter*, 2007 WL 135616 at * 6, slip op. No. 03-WM-1603 (BNB) (D. Colo. Jan. 16, 2007) (Miller, J.).  In two separate cases, the Tenth Circuit has noted that other courts which applied the doctrine to mental incapacity have limited its application to "exceptional circumstances."  *Uhey*, 2007 WL 135616 at * 6.  The Tenth Circuit identified two such exceptional circumstances as adjudication of incompetency or institutionalization.   *Biester v. Midwest Health Services, Inc.,* 77 F.3d 1264, 1268 (10th Cir. 1996).  Without deciding whether mental incapacity entitles an individual to equitable tolling, the Tenth Circuit determined that the plaintiffs in those cases did not present sufficient evidence to establish the exceptional circumstances necessary to warrant equitable tolling.  *See Harms v. Internal Revenue Service*, 321 F.3d 1001, 1006 (10th Cir. 2003)*;  Biester,* 77 F.3d at 1268.

Ms. Sullivan has never been adjudicated incompetent or been institutionalized.  Ms. Sullivan has not alleged that any misconduct by the Defendants caused her dilatoriness. The medical records provided by Ms. Sullivan indicate that as of February 21, 2003, Ms. Sullivan "can work in her capacity as a social psychologist."  (*See* attachments to Complaint (doc. # 1-6, at pp. 6,11  of 16)).  Ms. Sullivan's submissions indicate that as of March 24, 2003, Ms. Sullivan "can function fully at work now" and that the "[i]mpact of her medical condition on the activities of her position should be non-existent, other than some time off . . . ."  (*See* attachments to Complaint (doc. # 1-5, at p. 32  of 42)).  The medical records  indicate that in May and June of 2003 Ms. Sullivan was able to work four hours per day.  (*See* attachments to Complaint (doc. # 1-5, at pp. 13, 15, of 42)).  While David Draxton, M.A., L.P.C. recommended on May 13, 2003 that Ms. Sullivan take a few days of sick leave for "Recurrent Major Depression," on May 15, 2003 Mr. Draxton indicated that Ms. Sullivan was able to work 4 hours per day from May 19, 2003 to June 13, 2003.  (*See*

9

attachments to Complaint (doc. # 1-5, at pp. 16, 17 of 42)).  On May 21, 2003, Mr. Draxton recommended that Ms. Sullivan take one month of sick leave and that she would be returning to work on June 23, 2003.  (*See* attachments to Complaint (doc. # 1-5, at p. 18 of 42)).  On June 5, 2003, Mr. Draxton indicated that Ms. Sullivan "is resilient in her capacity to interact well professionally and socially, . . . will most likely be able to fully perform all duties in her position description" and "will likely be able to return [to work] by June 23, 2003." (*See* attachments to Complaint (doc. # 1-5, at p. 39 of 42)).  Ms. Sullivan expected to return to work on or about June 20, 2003.  (*See* attachments to Complaint (doc. # 1-5, at p. 1 of 42)).  Ms. Sullivan submitted information about several medications that she was prescribed, but there is no information before the court that the medication affected her mental capacity.  (*See* attachments to Complaint (doc. # 1-5, at p. 2 of 42; doc. # 1-7, at pp. 2-12 of 17)).  There is no indication in the medical records that Ms. Sullivan was mentally incapacitated.  (*See* attachments to Complaint (doc. # 1-5, at pp. 16-39 of 42)).

Ms. Sullivan wrote a letter dated May 19, 2003 requesting "15 days advanced sick leave." (*See* attachments to Complaint (doc. # 1-5, at p. 25 of 42)).  On June 2, 2003, Ms. Sullivan filed a complaint dated May 27, 2003.  (*See* attachments to Complaint (doc. # 1-5, at p. 34 of 42)).  Nothing in these communications reveals that Ms. Sullivan was suffering from a mental incapacity at the time she wrote them.   Ms. Sullivan was pursuing employment claims at the time period that she alleges she was mentally impaired.

Ms. Sullivan signed the NSA on June 9, 2003.  In her April 6, 2005 letter, where she first complained that the $61,000.00 lump sum payment should have been treated as non-taxable, Ms. Sullivan did not mention any mental impairment she had at the time she signed the NSA.  While most of the medical records submitted to the court by Ms. Sullivan were available to her at the time she signed the NSA and at the time she wrote the April 6, 2005 letter, she did not submit any medical information at those times.  Only after the

EEO denied her complaint did Ms. Sullivan raise the issue of her mental incapacity.  Ms. Sullivan alleged for the first time on May 25, 2005 that she "did not have the mental ability to process the information or comprehend its meaning" at the time she signed the NSA. (*See* attachments to Complaint (doc. # 1-2, at p. 26 of 29)).[3]  Yet Ms. Sullivan alleges she has a clear memory and detailed understanding of all of the terms of the NSA.  (*See, e.g.,* attachments to Complaint (doc. # 1-2, at pp. 2-3, 18-19 of 29; doc. # 1-3, at pp. 9-14 of 33; doc. # 105, at pp. 1-2 of 42)).  Ms. Sullivan's detailed understanding is not consistent with her allegation that she was mentally incapable of understanding and pursuing her legal rights at the time she signed the NSA.

In sum, Ms. Sullivan's bare allegation that she was experiencing "an altered state of mind" (*see* attachments to Complaint (doc. # 1-2, at p. 24 of 29)) is not sufficient to establish the exceptional circumstances necessary to warrant equitable tolling.  The First Claim for Relief is properly dismissed as untimely.[4]

Accordingly,

IT IS RECOMMENDED that  Defendants' Motion to Dismiss (filed July 7, 2006) (doc. # 4) be GRANTED and that this civil action be DISMISSED with prejudice.

---

[3]     Further, if Ms. Sullivan were mentally incompetent to sign the NSA, then the entire NSA would be voidable.  *See Powderhorn Coal Co. v. Weaver*, 835 P.2d 616, 618-19 (Colo. App. 1992) (contract is voidable by the person lacking capacity to contract because of mental incompetency) (citation omitted).  However, Ms. Sullivan seeks only monetary damages.

[4]     With respect to her "new claims" that she suffered discrimination in the settlement process, Ms. Sullivan has failed to allege that similarly-situated individuals outside her protected group were treated differently.  Thus, she has failed to establish a prima facie case of discrimination based on gender.  *See Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1380 (10th Cir. 1994).  Because she has failed to allege that the challenged provision of the NSA was an adverse employment action or that a causal connection exists between her protected activity and the challenged provision of the NSA, Ms. Sullivan has likewise failed to establish a prima facie case of retaliatory discrimination.  *See Murray v. City of Sapulpa*, 45 F.3d 1417, 1420 (10th Cir. 1995).

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).

The district judge shall make a *de novo* determination of those specific portions of the proposed findings or recommendations to which specific objection is made. 28 U.S.C. § 636(b)(1).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  *See In re Griego*, 64 F.3d at 583;  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  28 U.S.C. § 636(b)(1).

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *One Parcel of Real Property*, 73 F.3d at 1060.  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (district court's decision to review a magistrate's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *International Surplus Lines Insurance Co. v.*

*Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 12th day of February, 2007.

BY THE COURT:

    s/Craig B. Shaffer         
United States Magistrate Judge